UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES RIVER INSURANCE          :
CO.                            :
                               :
        v.                     :        C.A. No. 13-681S
                               :
ICON CORP., et al.             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

        Before the Court is Plaintiff's Motion for Summary Judgment. (Document No. 18). Defendant

ICON Corporation objects. (Document No. 22). This Motion was referred to me by Chief Judge

Smith for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR

Cv 72(a). A hearing was held on July 16, 2015. For the reasons stated below, I recommend that

Plaintiff's Motion for Summary Judgment (Document No. 18) be DENIED in part, and GRANTED

in part.

        **BACKGROUND**

        This is a declaratory judgment action brought by James River Insurance Co. ("James River"),

the insurer, against its insured ICON Corporation. ICON is the operator of a nightclub known as the

Colosseum in Providence, Rhode Island. James River issued a Commercial General Liability Policy

to ICON, which contains clauses excluding coverage for claims arising from an "expected or intended

injury" as well as "assault and battery." ICON was sued in state court on two separate bodily injury

claims by patrons of its nightclub, Tony Tran ("Tran") and Nicholas Rampone ("Rampone"). Based

on the Policy exclusions, James River asserts in its Complaint that it no longer owes a duty to defend

ICON with respect to the claims brought against it by Tran and that it has no duty to defend the claims

made against ICON by Rampone.  ICON disputes James River's position, and in a Counterclaim, ICON asserts that James River is obligated to provide it with defense and indemnity in both cases. James River moves for summary judgment with respect to its claim and ICON's counterclaim.

**FACTS**[1]

James River issued Commercial General Liability Policy No. 00042347-0 to ICON for an initial policy period of February 25, 2010 to February 25, 2011.  It was renewed the following year as Policy No. 00042347-1, effective February 25, 2011 to February 25, 2012.  The Policy provides liability coverage to ICON on a claims made and reported basis, with limits of insurance of $1,000,000.00 (each occurrence) and $2,000,000.00 (general aggregate limit).  (Document No. 19, ¶ 1).  The policy states:

> [w]e [James River] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend that insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.  We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result....

Id. at ¶ 2.  The Policy contains an Assault and Battery Exclusion Endorsement, which sets forth separate "assault and battery" and "expected or intended injury" exclusions, as follows, in pertinent part:

> This insurance does not apply to damages or expenses due to 'bodily injury,' 'property damage' or 'personal and advertising injury' arising out of, resulting from, or in connection with:

---

[1] ICON did not dispute the facts set forth by James River, but instead contends that there are "additional undisputed facts" that preclude the entry of summary judgment.  The Court will note the disputed facts, where relevant.

(1) Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever;

(2) The failure to suppress or prevent assault or battery by you, any insured, or any person;

(3) The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to assault or battery;

(4) The negligent employment, investigation, hiring, supervision, training, or retention of any person;

(5) The use of any force to protect persons or property whether or not the 'bodily injury'...was intended from the standpoint of the insured or committed by or at the direction of any insured; or

(6) The failure to render or secure medical treatment or care necessitated by any assault or battery.

Assault includes, but is not limited to, assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

Battery includes, but is not limited to, battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

SECTION 1 – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph a. is deleted in its entirety and replaced with the following:

a.   Expected or Intended Injury

   'Bodily injury' or 'property damage' which is expected or intended by one or more insureds even if the 'bodily injury' or 'property damage':

(1)  Is of a different kind, quality, or degree than initially expected or intended; or

(2)  Is sustained by a different person, entity, real or personal property than initially expected or intended.

On March 23, 2011, Tran filed suit against ICON in Providence Superior Court, C.A. No. PC-2011-1598 (the "Tran Action").  Id. at ¶ 7.  According to Tran's underlying Complaint, on August 14, 2010, he was on premises controlled by ICON in Providence.  Id. at ¶ 4.  Tran asserts that ICON breached its duty to exercise reasonable care and caution in the operation of such premises when it, "by and through its agents, servants and employees, also negligently, carelessly, intentionally, recklessly and improperly caused and allowed physical injury to [Tran]."  Id. at ¶ 5.  Based on the broad language of the Complaint, James River has defended ICON in the Tran Action while reserving its rights under the Assault and Battery ("A&B") and Expected or Intended Injury Exclusions.  Id. at ¶ 8.

As discovery progressed in that case, the parties learned that Tran reported to the Providence Police Department that "a large disturbance started inside the club and at some point a bouncer put him in a choke hold from behind and pushed him down a flight of stairs."  Id. at ¶ 6.  Then, in his Answers to Interrogatories, Tran described his underlying incident as follows: "[a]s I was coming out of the bathroom, I noticed a fight had broken out.  As I went back to the bar, a bouncer came from behind, choked me and threw me down the stairs."  Id. at ¶ 9.  At his deposition, Tran recalled that, "[t]he minute I walked there, it was surprise, I got, you know, choked from behind and lift up and carried out."  Id. at ¶ 10.  He did not see the person who grabbed him – "[i]t happened so quick.  He turned me, threw me down the stairs."  Id.

Tran's brothers, Johnny and Jones, witnessed the incident and confirmed his account: "we were walking out, and I seen a bigger black bouncer holding my brother Tony, and he just pushed him down

the stairs, and we went over to see what really happened, and Tony was on the bottom of the stairs...";
"As we're walking and getting rushed out the door, I noticed my brother getting dragged out by his
neck....As we were going, I seen the whole thing, Tony getting tossed down the stairs." Id. at ¶ 11.

ICON did not dispute the basic facts concerning Tran's claim, but argued that the facts at issue
in the Superior Court case remain very much unsettled. For example, ICON points out that Tran's
brothers, who were present during the altercation, all provided different descriptions of the bouncer
and that the descriptions provided did not fit any of the bouncers working that day. (Document No.
23 at ¶¶ 24-26). ICON also argues that there is testimony from the President of ICON that Tran was
the aggressor and tripped on a step as he was being escorted from the premises. Id. at ¶ 23.

On July 9, 2012, Rampone filed suit against ICON in Providence Superior Court, C.A. No. PC-
2012-3506 (the "Rampone Action"). (Document No. 19 at ¶ 14). Rampone's Complaint alleges that
on July 17, 2011, he was in the "Colosseum" nightclub "when he was attacked by an unknown
bouncer." Id. at ¶ 12. Rampone asserts that the bouncer was an employee or agent of ICON, and that
"[a]s a direct and proximate result of said attack by the bouncer," he suffered personal injuries. Id. at
¶ 13. Through a letter dated July 27, 2012, James River informed ICON that its claim for coverage
was denied as a result of the clear allegations of assault and battery in the Complaint, pursuant to the
Assault and Battery and "Expected or Intended Injury" Exclusions. Id. at ¶ 15.

The reports taken contemporaneously with Rampone's injury support this version of events.
The ambulance company that transported Rampone to the hospital was "[c]alled for a man
assaulted...who states club bouncer took him down to the floor." Id. at ¶ 16. The records from
Rampone's ensuing Emergency Room visit provide as follows, in pertinent part: "...History of Present
Illness: Mr. Rampone is a 23-year-old that was assaulted in a nightclub by a bouncer and was thrown
on the floor...." "Emergency Physician Record: Alleged Assault...23 [year old] male assault...jaw pain

[and] [laceration] to chin...."  "Diagnosis: Chin Laceration; Assault; Mandible Fracture" "Chief Complaint: Assault." Id. at ¶ 17.  Rampone has testified that he was "assaulted" as a result of the bouncer's "chokehold," and that his broken jaw "was caused by his [the bouncer's] excessive use of force." Id. at ¶ 18.  Erik Oberg, the bouncer who was involved in the altercation with Rampone, intended to put Rampone in a "chokehold." Id. at ¶ 19.  Oberg is an employee of ICON. Id. at ¶ 20. According to Rampone's police report, Oberg "grabbed him from behind in a choke hold," began walking him to the door, and then, after Rampone became dizzy and tapped Oberg's arm, "Oberg picked him up and slammed him face first onto the floor." (Document No. 23 at ¶ 29).  Rampone subsequently changed course and indicated that Oberg "never picked me up and slammed me.  We tripped." Id.  ICON also provided this Court with video of the Rampone incident, that they claim shows that Rampone and Oberg "accidentally got their legs tangled and tripped, causing Rampone's injuries, and that the injuries were not caused by any alleged assault or chokehold by Oberg." Id. at ¶ 30.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1ˢᵗ Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735.  Once the movant has made the requisite showing, the

nonmoving party "may not rest upon mere allegations or denials of [its] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

**DISCUSSION**

**1.    Duty to Defend**

"Under Rhode Island law, an insurer's duty to defend its insured is broader than its duty to indemnify."  Emp'r Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 1998).  Rhode Island applies the "pleadings test" in determining a duty to defend.  Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001).  "Under the pleadings test, the insurer's duty to defend is ascertained by laying the complaint alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured."  Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 236 (D.R.I. 2007) (quoting Emp'r Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968)).  "[I]n other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend."  Id. (quoting Beals, 240 A.2d at 403).  Further, "a reasonableness requirement is implicit in the pleadings test" in order to defeat attempts "to 'plead to coverage' by characterizing a claim as something other than what is described in the complaint's factual allegations."  Narragansett Jewelry Co., Inc. v. St. Paul Fire and Marine Ins. Co., 526 F. Supp. 2d 245, 248-249 (D.R.I. 2007).  See also Peerless Ins. Co. v. Viegas, 667 A.2d 785, 789 (R.I. 1995) ("A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.").  Finally, "[a]ny doubts as to whether the complaint

-7-

alleges an event covered under the policy must be resolved in favor of the insured." <u>Narragansett Jewelry</u>, <u>supra</u>, at 248.

The application of the "pleadings test" requires a determination as to the insurance policy's scope of coverage. Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts." <u>Town of Cumberland v. R.I. Interlocal Risk Mgmt. Tr., Inc.</u>, 860 A.2d 1210, 1215 (R.I. 2004). Courts must "look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." <u>Id.</u> If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured." <u>Id.</u> If a policy's terms are unambiguous, it will be construed and applied as written. <u>Malo v. Aetna Casualty and Surety Co.</u>, 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." <u>W.P. Associates. v. Forcier, Inc.</u>, 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." <u>RGP Dental, Inc. v. Charter Oak Fire Ins. Co.</u>, No. 04-445, 2005 WL 3003063 at *4 (D.R.I. November 8, 2005).

### 2.      The Tran Case

Tran's Superior Court Complaint states, <u>inter alia</u>, that ICON, "by and through its agents, servants and employees, [ ] negligently, carelessly, intentionally, recklessly and improperly caused and allowed physical injury to Plaintiff." (Document No. 19-3 at p. 3). As James River noted, it has defended ICON in this action because of this broad language, while reserving its rights under the Assault and Battery and Intended Injury Exclusions. Now, however, James River argues that through discovery, it has been "revealed that the <u>only possible recovery</u> for Tran involves a claim premised on intentional acts," and asks the Court to grant its Motion declaring that James River has no duty to defend or indemnify ICON in Tran's case. (Document No. 18-1 at p. 8). (emphasis added). James

River goes on to argue that Tran has not "pursued or developed a viable theory of negligence against ICON during the Superior Court litigation...." Id. at p. 14.

ICON's response attempts to demonstrate that the facts presented in the state court case are still very much in the process of being determined. ICON points out that Tran's brothers gave differing accounts of what occurred and that their descriptions of the bouncer do not match each other, and are not a fit for any of the bouncers working that evening. (Document No. 22-1 at p. 2). Thus, ICON claims that summary judgment should not enter on James River's claim because Tran could still pursue a variety of covered claims in his state court case.

This Court's task is simple: to apply the pleadings test and compare the language of the Policy with the claims made in the Complaint. The Court may also weigh extrinsic evidence, such as Tran's testimony, in this equation. Mount Vernon Fire Ins. Co. v. Stagebands, Inc., 636 F. Supp. 2d 143, 147 (D.R.I. 2009). When James River was first faced with the task of applying the pleadings test, it properly determined that the Complaint fell within the scope of potentially covered claims under the Policy. Now, James River believes that the facts that have been discovered change the equation. As this Court has noted, "the duty to defend, once established, is not interminable." Id. In Mount Vernon, the Court recognized an insurer's right to seek to "halt its duty [to defend] by showing as a matter of law that claims could never be within the bounds of coverage." Id. (emphasis added). The Court cautioned, however, that "when there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage." Id. (quoting Appleman on Insurance § 136.2[D] (2d ed. 2006). (emphasis added).

While the facts developed during discovery indicate that Tran is now alleging an intentional action of the bouncer, there is nothing preventing Tran from continuing to pursue his negligence claim

against ICON.  The facts are still being discovered, and Tran still has a pending negligence claim against ICON.  The door remains open for him to pursue such claim because there has been no stipulation or court order narrowing the Complaint to eliminate his negligence claim.  This Court cannot shut the door that the parties have left open in state court.  Because Tran could still pursue recovery for ICON's alleged negligence, there is a potential that at least some of his claims are within the scope of coverage set forth in the Policy.  James River has not met the burden established in <u>Mount Vernon</u>, and thus must continue to defend the action for the same reasons that it initially provided a defense to ICON.  Thus, I recommend that James River's Motion for Summary Judgment as to the Tran claim be DENIED.

### 3.      The Rampone Case

In terms of James River's view of its duty to defend, the Rampone case essentially involves the reverse scenario of what occurred in the Tran case.  In Rampone, the state court Complaint alleges, <u>inter</u> <u>alia</u>, that Rampone "was in the Colosseum nightclub when he was attacked by an unknown bouncer."  (Document No. 19-10 at p. 4).  Based on the allegations in that Complaint, James River properly denied a defense from the outset.  In its Counterclaim, ICON states that "[d]uring discovery in said action, it is apparent that Rampone alleges he was injured as the result of negligent conduct by [an] employee of Defendant ICON."  (Document No. 9 at p. 2).  ICON's counterclaim asserts that James River now owes it a duty to defend and to indemnify as to the Rampone claim.

As noted, the initial reports, both to the ambulance and hospital, characterized Rampone as being assaulted and/or a victim of assault.  However, during discovery, Rampone seemingly deviated from that version of events, and stated that, "[o]ur legs got tripped up, we both fell forward.  I landed on the ground.  He landed on the back of my head."  (Document No. 22-1 at p. 3).  He also stated that the bouncer "never picked me up and slammed me.  We tripped."  (Document No. 23 at ¶ 29).

Similar to Tran, there has been no stipulation or court order amending the allegations in the state court Complaint filed by Rampone.  Therefore, the question is whether the facts presented in discovery in Rampone's underlying action are sufficient to now trigger James River's duty to defend. After reviewing the plain language of the Policy, I do not find Rampone's testimony sufficient to trigger James River's duty to defend at this time.

The exclusions contained in the policy are broad enough that even if the Court credits Rampone's new allegation that he tripped and fell, his bodily injury claim is still excluded because the injury arises from Rampone being ejected from the nightclub through the use of force, i.e., a chokehold.  There is no dispute that Rampone was placed into a chokehold by the bouncer, the only dispute is whether he was intentionally pushed to the ground, or if they tripped and fell due to the awkward posture they were in because of the chokehold.  Whether they tripped or Rampone was pushed, his injury arose from the chokehold position he was placed in, and this is plainly excluded by the Policy, as more fully explained below.

First, the Policy contains a broad exclusion for "[a]ssault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever."  Importantly, the Policy contains a specific definition of battery, which states: "Battery includes…any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of …[insured]."  Here, the claims made by Rampone clearly arise out of a battery, as the chokehold Rampone was placed in constitutes "an offensive contact." The Policy's specific definition of battery is also the reason that ICON's attempt to persuade the Court to follow the reasoning of United Nat'l Ins. Co. v. Penuche's, Inc., 128 F.3d 28, 32 (1st Cir. 1997) is unavailing.  The Penuche case involved a patron injured by a bouncer after the bouncer placed the patron in a "bear hug," and the Court

reasoned that the bouncer's intent in placing the patron in the bear hug was crucial in determining if a battery occurred.  In Penuche, however, the Court specifically noted that the policy at issue did not define "battery," so the Court was forced to look to the common law definition.  Id.  Thus, that Court's focus on the intent of the bouncer is inapplicable, because intent is not a part of the definition of battery contained in the Policy at issue in this case.  In this case, the definition of a battery set forth in the Policy clearly encompasses the chokehold on Rampone, regardless of the intent of the bouncer.

In addition to falling within the definition of a battery, the bodily injury claims which stemmed from the chokehold are also not covered because the Policy excludes claims made involving "[t]he use of any force to protect persons or property whether or not the bodily injury...was intended from the standpoint of the insured or committed by or at the direction of any insured."  Additionally, the "Expected Or Intended Injury" clause excuses James River from liability when the injury is "…of a different kind, quality, or degree than initially expected or intended…."  Thus, even if the bouncer did not intend to cause Rampone to fall and injure his jaw, he did intend to place him into the chokehold to remove him from the nightclub (a battery), which resulted in an injury of a "different kind, quality, or degree…" as defined by the Policy.  In short, it is clear that the Policy excludes this claim based on injuries sustained after Rampone was placed into a chokehold, regardless of whether he was intentionally taken to the ground, or tripped and fell.  Therefore, I recommend that James River's Motion for Summary Judgment as to the Rampone claim be GRANTED.

**CONCLUSION**

For the foregoing reasons, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 18) be DENIED as to the Tran claim and GRANTED as to the Rampone claim.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72(d).

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 26, 2015